UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60611-RAR

WENDY MAFUNDU, *et al.*,

       Plaintiffs,

v.

ALEJANDRO MAYORKAS, *et al.*,

       Defendants.

_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss Amended Petition for Writ of Mandamus and Complaint for Administrative Procedures Act Judicial Review, Declaratory Relief, and Injunctive Relief ("Motion"), [ECF No. 14].[1] The Court, having reviewed the Motion, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motion, [ECF No. 14], is **GRANTED** as explained herein.

## BACKGROUND

Plaintiffs Wendy Mafundu and George Zagros filed this action to compel Defendants to issue a decision on Mafundu's pending Form I-601A. *See generally* Amended Petition for Writ of Mandamus and Complaint for APA Judicial Review, Declaratory, and Injunctive Relief ("Amended Complaint"), [ECF No. 11]. Mafundu's Form I-601A has been pending with U.S. Citizenship and Immigration Services ("USCIS") since July 9, 2021. Am. Compl. ¶ 34. Mafundu is a citizen of Zimbabwe who currently resides in Plantation, Florida with Zagros, her husband,

---

[1] Plaintiffs filed a Response, [ECF No. 15]. The Court did not allow Defendants to file a Reply. *See* Paperless Order, [ECF No. 10]. Accordingly, the Motion is fully briefed and ripe for review.

who is a U.S. citizen.  Am. Compl. ¶ 4.  Plaintiffs are attempting to obtain lawful permanent resident status for Mafundu, but they allege USCIS has unreasonably delayed adjudicating her Form I-601A.  *See* Am. Compl. ¶ 50.  The Court will briefly summarize the relevant immigration process Mafundu and Zagros are in the midst of navigating.

A noncitizen may obtain lawful permanent resident status through a variety of mechanisms. Relevant here, noncitizens may become lawful permanent residents by way of their familial relationship with United States citizens or lawful permanent residents.  *See* 8 U.S.C. § 1154(a)(1)(A)(i).  There are several steps noncitizens must take to avail themselves of this pathway to lawful permanent resident status.  To begin the process, a citizen or lawful permanent resident must file a Form I-130 on behalf of a noncitizen relative.  *See* Am. Compl. ¶ 18.  If the Form I-130 is approved, the noncitizen is then classified as an immigrant relative of the citizen or lawful permanent resident.  *See id.*  Certain noncitizens must then apply for an immigrant visa at a U.S. embassy or consulate.  Am. Compl. ¶ 19.

This poses a problem for some noncitizens.  Noncitizens who have been unlawfully present in the United States for more than 180 days are deemed inadmissible for a specified period of time following their departure or removal.  *See* 8 U.S.C. § 1182(a)(9)(B)(i).  This period of inadmissibility changes depending on how long the noncitizen was unlawfully present: usually three years if the noncitizen was present for less than a year and ten years if the noncitizen was present for a year or more.  *Id.*  So, noncitizens unlawfully present in the United States for at least 180 days who must apply for a visa at an embassy or consulate face an extra hurdle.  They must leave the country to apply for a visa but, because they would usually be inadmissible into the United States, they cannot return.  And even if noncitizens are ultimately granted a visa, they are not entitled to enter the United States if they are otherwise deemed inadmissible.  *See id.* § 1201(h).

But these noncitizens are not completely foreclosed from pursuing lawful permanent resident status. The Attorney General has "sole discretion" to waive a noncitizen's inadmissible status based on unlawful presence. *Id.* § 1182(a)(9)(B)(v). Two requirements must be met to qualify for a waiver. First, the noncitizen must be "the spouse or son or daughter of a United States citizen or" lawful permanent resident. *Id.* Second, the Attorney General must find that refusing the noncitizen entry "would result in extreme hardship to the citizen or lawfully resident spouse or parent" of the noncitizen. *Id.* Therefore, a noncitizen may apply for a provisional unlawful presence waiver to leave the United States and apply for an immigrant visa more easily. *See id.* This step is at the heart of this dispute.

Plaintiff Mafundu is a noncitizen who has been unlawfully present in the United States for more than 180 days. *See* Am. Compl. ¶ 29. On March 16, 2020, Zagros filed a Form I-130 on Mafundu's behalf, which USCIS approved on September 3, 2020. Am. Compl. ¶ 33. Mafundu then filed her Form I-601A, the relevant application to receive a provisional unlawful presence waiver, on July 9, 2021. Am. Compl. ¶ 34. USCIS has seemingly taken no action on Mafundu's application since it was filed. Am. Compl. ¶¶ 35–36. Plaintiffs therefore filed this action on March 29, 2023 and their Amended Complaint on June 7, 2023. Defendants move to dismiss this case because (1) the Court does not have jurisdiction over this dispute; (2) Plaintiffs lack standing; and (3) Plaintiffs have failed to state a claim upon which relief can be granted.

**LEGAL STANDARD**

A party may move to dismiss a case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). FED. R. CIV. P. 12(b)(1). A challenge to the court's subject matter jurisdiction can either be a "facial" or "factual" attack on jurisdiction. *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008). A facial attack challenges

the court's jurisdiction based solely on the plaintiff's allegations. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Factual attacks rely on matters outside of the pleadings, and the court may consider extrinsic evidence and "weigh the facts" to determine if jurisdiction exists. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013) (quoting *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009)). The plaintiff has the burden of proving jurisdiction exists over a case. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim," but a complaint must set forth more than "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In addition to accepting the complaint's allegations as true, the court must draw all inferences in the plaintiff's favor when determining if a complaint states a claim to relief. *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017). A claim to relief is plausible where the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Ultimately, "determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) (alterations accepted) (quoting *Iqbal*, 556 U.S. at 679).

<u>ANALYSIS</u>

**I. This Court Lacks Subject Matter Jurisdiction**

Defendants first argue the Court lacks subject matter jurisdiction because (1) mandamus relief is not warranted; and (2) the Immigration and Nationality Act ("INA") contains a jurisdiction stripping provision that precludes the Court from adjudicating this matter. Because Defendants only rely on Plaintiffs' allegations, they lodge a facial attack on the Court's jurisdiction. The Court agrees with both jurisdictional arguments advanced by Defendants.

*a. The Court Does Not Have Jurisdiction to Award Mandamus Relief*

First, the Court addresses whether it has jurisdiction to grant any mandamus relief in these circumstances. It does not. The Mandamus Act gives district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is an extraordinary remedy available only in the clearest and most compelling of cases." *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1263 (11th Cir. 2011). A court can only exercise jurisdiction to grant mandamus relief where "(1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *See id.* A plaintiff seeking mandamus relief "has the burden of demonstrating that his right to the writ is clear and indisputable." *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1037 (11th Cir. 2021) (quoting *Serrano*, 655 F.3d at 1263). In other words, "a writ of mandamus 'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.'" *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

Plaintiffs have failed to establish—at the very least—the first two requirements for mandamus relief. Therefore, the Court does not have jurisdiction under the Mandamus Act. Considering these two requirements together, the proper inquiry is whether Plaintiffs have demonstrated they have a clear right to have Mafundu's Form I-601A adjudicated within their preferred timeframe. *See Osechas Lopez v. Mayorkas*, — F. Supp. 3d —, 2023 WL 152640, at *3 (S.D. Fla. 2023) ("[T]he Court must determine whether Defendants have a non-discretionary duty to act to adjudicate Plaintiff's I-526 petition in a certain time frame, whether general, reasonable, or even the more specific period of '180 days.'" (quoting 8 U.S.C. § 1571(b)); *Alfassi v. Garland*, 614 F. Supp. 3d 1252, 1255 (S.D. Fla. 2022) (concluding "[p]laintiffs ha[d] not demonstrated a clear right" to have "USCIS expedite processing of their I-130 Petition" or that USCIS had "a clear duty to act with respect to the pacing of their I-130 Petition").

Plaintiffs have failed to establish they are owed this duty. They are correct 8 U.S.C. § 1571(b) provides that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." But Congress's "sense" about how long an application "should" take to process hardly establishes that Defendants have a clear duty to process an application within this timeframe. "Should" is "permissive, and not mandatory." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008). The permissive wording of the statute makes clear Congress did not impose a mandatory timeframe on USCIS's adjudication of waiver applications. Plaintiffs themselves concede this point when they refer to the statute as "non-binding." Resp. at 8. Therefore, the first two requirements for mandamus jurisdiction are not met.

Finally, while the Court concludes below that it does not have jurisdiction over Plaintiffs' Administrative Procedure Act ("APA") claims, to the extent jurisdiction exists over such claims,

they provide an adequate remedy to Plaintiffs. *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011) ("The availability of relief under the Administrative Procedure Act . . . forecloses a grant of a writ of mandamus."). Therefore, any claim for mandamus relief must be dismissed without prejudice for lack of subject matter jurisdiction.

### b. 8 U.S.C. § 1182(a)(9)(B)(v) Prohibits Review

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA further empowers courts to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). But there are limits to a court's power to review agency action. Where "statutes preclude judicial review" or "agency action is committed to agency discretion by law" a court cannot award relief. *See id.* § 701(a).

Defendants argue the INA explicitly prohibits judicial review of the pace at which USCIS adjudicates waiver applications. The INA provides in relevant part:

> The Attorney General has sole discretion to waive clause (i) in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien. *No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause.*

8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added). Plaintiffs argue that because USCIS has accepted an application processing fee it now has a non-discretionary duty to render a timely decision. Resp. at 8. Given the sweeping language of the above provision, however, the Court agrees jurisdiction over this matter is explicitly prohibited. Courts cannot review any "decision or *action* . . . regarding a waiver." 8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added). "Action" has an expansive meaning,

including "a thing done" and "the process of doing." WEBSTER'S THIRD NEW INT'L DICTIONARY, at 21 (1993). "[A]gency action" as defined in the APA is perhaps even more expansive and "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to act*." 5 U.S.C. § 551(13) (emphasis added). Additionally, the Supreme Court has recognized that when "regarding" is used "in a legal context [it] generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022) (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018)). USCIS's decisions about how and when to adjudicate Form I-601A applications fall within the ambit of the expansive language Congress used when stripping federal courts of jurisdiction to review "action[s]" regarding waivers governed by § 1182(a)(9)(B)(v).

While few courts have addressed this specific issue, at least two have agreed with this conclusion. *See Mercado v. Miller*, No. 2:22-cv-02182, 2023 WL 4406292, at *3 (D. Nev. July 7, 2023) (stating that "§ 1182(a)(9)(B)(v) precludes judicial review of USCIS's alleged delay in processing" Form I-601A applications); *Lovo v. Miller*, No. 5:22-cv-00067, 2023 WL 3550167, at *3 (W.D. Va. May 18, 2023) ("Thus, § 1182(a)(9)(B)(v) applies to USCIS's decision or action to delay the processing of plaintiffs' I-601A application because that decision or action relates to plaintiffs' unlawful presence waiver."); *see also Lin v. Mayorkas*, No. GJH-22-1131, 2022 WL 17850202, at *2 (D. Md. Dec. 21, 2022) (dismissing I-601A unreasonable delay claim for lack of subject matter jurisdiction on the plaintiff's default of a motion to dismiss); *cf. Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1353 (S.D. Fla. 2007) (holding "that Congress intended to include the pace [of adjudicating Form I–485 petitions] within [USCIS's] discretionary function").

Therefore, the Court does not have jurisdiction to review USCIS's decision regarding the pace of Form I-601A applications and this case must be dismissed.[2]

## II.  The Court Would Nevertheless Dismiss the Amended Complaint on the Merits

While the Court does not have jurisdiction over this dispute, if it were to reach the merits, it would hold Plaintiffs' Amended Complaint does not state a plausible claim to relief.  When assessing unreasonable delay claims under the APA, courts frequently use the "*TRAC* factors," a six-factor test articulated by the D.C. Circuit in *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*").  The *TRAC* factors provide the following guidance to courts adjudicating unreasonable delay disputes:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotation marks and citations omitted).  The Eleventh Circuit has not adopted the *TRAC* factors, but district courts in this circuit have found them appropriate to

---

[2]  Defendants argue Plaintiffs lack standing, but while the Court agrees it is without jurisdiction to review this dispute, it would find Plaintiffs have standing.  To establish standing, the plaintiff must demonstrate (1) an injury in fact; (2) that is "fairly traceable" to the defendant; and (3) that a favorable judicial decision can likely redress.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Defendants reframe the inquiry and argue Plaintiffs lack standing because Mafundu has further steps she must take to receive lawful status or could have her application denied.  Mot. at 9–10.  The Court would reject this argument because Defendants' adjudication of the application is preventing Mafundu from potentially accessing the next steps she must take—and an order compelling them to adjudicate it would alleviate this issue.  *See, e.g., Da Costa v. Immigr. Inv. Program Off.*, — F. Supp. 3d —, 2022 WL 17173186, *4 (D.D.C. 2022) ("Defendants do not dispute that an increased delay in adjudication of the [plaintiffs'] Form I-526 is an injury sufficient to support standing.").

apply when adjudicating unreasonable delay claims in the immigration context.  *See Otto v. Mayorkas*, No. 8:22-cv-1172, 2023 WL 2078270, at *3 (M.D. Fla. Feb. 17, 2023); *Osechas Lopez*, 2023 WL 152640, at *5–6; *Lara Santiago v. Mayorkas*, 554 F. Supp. 3d 1340, 1353 (N.D. Ga. 2021); *Mondragon Tinoco v. Mayorkas*, No. 1:20-cv-4787, 2021 WL 3603373, at *9 (N.D. Ga. Aug. 13, 2021).   Notably, Plaintiffs explicitly invoke the *TRAC* factors in their Amended Complaint and include extensive allegations relating to each factor when alleging USCIS has unreasonably delayed adjudicating Mafundu's application.  *See* Am. Compl. ¶¶ 40–62.  The Court, therefore, finds it appropriate to use the *TRAC* factors in evaluating Plaintiffs' claims.

Courts are split on whether the *TRAC* factors may be adjudicated on a motion to dismiss. Some courts have adjudicated the issue at the motion to dismiss stage when the "record contains enough facts to evaluate the TRAC factors."  *Osechas Lopez*, 2023 WL 152640, at *5 (quoting *Da Costa*, 2022 WL 17173186, at *9); *see also Otto*, 2023 WL 2078270, at *3–4 (applying the *TRAC* factors at the motion to dismiss stage).  Other courts have found the *TRAC* factors to be too fact intensive to apply at the motion to dismiss stage.  *See, e.g.*, *Lammers v. Chief, Immigrant Inv. Program, U.S. Citizenship & Immigr. Servs.*, No. 6:21-cv-668, 2021 WL 9408916, at *2–3 (M.D. Fla. July 28, 2021); *Mondragon Tinoco*, 2021 WL 3603373, at *10.  Plaintiffs argue the Court should wait until at least some discovery has been conducted before applying the factors.  Resp. at 14–16.

The Court is satisfied it can conduct the *TRAC* analysis at this stage.  Plaintiffs have included numerous allegations in their Amended Complaint the Court can consider on a motion to dismiss.  Additionally, both parties have briefed the *TRAC* factors.  *See Osechas Lopez*, 2023 WL 152640, at *5 (applying *TRAC* analysis at the motion to dismiss stage where the plaintiff "briefed the TRAC factors").  And finally, the Court can take judicial notice of certain facts relevant to the

determination.  Taken together, the record is sufficient to determine that Plaintiffs do not state a plausible claim to relief.  *See Sarlak v. Pompeo*, No. 20-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) ("[I]n cases like this one involving claims of unreasonably delayed waiver determinations, the *TRAC* factors have been generally employed at the motion to dismiss stage to determine whether a plaintiff's 'complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay.'" (quoting *Ghadami v. Dep't of Homeland Sec.*, No. 19-00397 (ABJ), 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020))).

### a.  *The First and Second Factors Heavily Favor Defendants*

"Courts typically consider *TRAC* factors one and two together."  *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021).  Together, "these factors get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale."  *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  The first factor is the "most important" when determining whether to grant relief.  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).

Defendants have explained USCIS adjudicates applications on a "first in, first out" basis, which Plaintiffs do not meaningfully contest.  Mot. at 14.  Instead, Plaintiffs resort to arguing they have stated a plausible claim to relief because wait times are now longer than they used to be.  Resp. at 12–13.  Indeed, the Amended Complaint has no factual matter relating to a rule of reason other than the bare allegation that "USCIS does not follow a rule of reason."  Am. Compl. ¶ 41.  But Defendants' assertion aligns with the information publicly available on USCIS's website, which states, "We generally process cases in the order we receive them."  *See* U.S. Citizenship & Immigration Services, *Check Case Processing Times*, https://egov.uscis.gov/processing-times/ (select "I-601A"; then select "Provisional Waiver of Unlawful Presence" and "Nebraska Service

Center"). The Court may consider this information when adjudicating Defendants' Motion. *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 48 & n.3 (D.D.C. 2021) (considering statements on USCIS's website on a motion to dismiss); *Cohen v. Jaddou*, No. 21-CV-5025 (PAC), 2023 WL 2526105, at *2 (S.D.N.Y. Mar. 15, 2023) (taking judicial notice of material on USCIS's website when adjudicating a motion to dismiss);[3] *Punt v. U.S. Citizenship & Immigr. Servs.*, No. 22-1218 (RC), 2023 WL 157320, at *3 (D.D.C. Jan. 11, 2023) (considering USCIS's representation that it adjudicates I-526 petitions on a first-in, first-out basis contained in a motion to dismiss).

Courts routinely hold USCIS's first-in, first-out policy is a rule of reason that satisfies the first *TRAC* factor. *See, e.g.*, *Punt*, 2023 WL 157320, at *3 (concluding the plaintiff's "spare allegations do nothing to call into doubt the reasonableness of USCIS's first-in, first-out approach"); *Palakuru*, 521 F. Supp. 3d at 51 ("Courts have recognized that a 'first-in, first-out method' satisfies the rule-of-reason inquiry."); *Verma v. U.S. Citizenship & Immigr. Servs.*, No. 20-3419 (RDM), 2020 WL 7495286, at *6 (D.D.C. Dec. 18, 2020) ("Those courts that have considered the issue have unanimously held that USCIS's 'first in, first out' policy for adjudicating immigration applications like Plaintiff's qualifies as a 'rule of reason,' thus satisfying the first *TRAC* factor."). The Court agrees this policy sufficiently qualifies as "an identifiable rationale" that satisfies the first *TRAC* factor. *Ctr. for Sci. in the Pub. Int.*, 74 F. Supp. 3d at 300. Accordingly, the first and most important *TRAC* factor weighs heavily in Defendants' favor.

The second *TRAC* factor also weighs against Plaintiffs because they have not identified any "timetable or other indication of the speed with which [Congress] expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80. Courts recognize that "Congress has

---

[3] Plaintiffs never contest the Court can take judicial notice of USCIS's website. *See* Mot. at 14 (arguing the Court can take judicial notice of this material).

supplied no timeline for processing waiver applications." *See Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020). "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Id.* (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)). The only statute Plaintiffs point to is 8 U.S.C. § 1571, but the Court has already addressed why this statute does not impose a mandatory pace for adjudicating applications. *See also Otto*, 2023 WL 2078270, at *5 ("[A]ll agree that § 1571(b) is not mandatory."); *Osechas Lopez*, 2023 WL 152640, at *6 (holding § 1571 did not impose a mandatory timetable and therefore the second *TRAC* factor weighed against granting relief); *Da Costa*, 2022 WL 17173186, at *9–10 (concluding the first two *TRAC* factors weighed against plaintiffs in part because "the language in § 1571(b) is merely hortatory"). The second factor therefore weighs in Defendants' favor as well.

### b. The Third and Fifth Factors Only Slightly Favor Plaintiffs

The third and fifth factors ask the Court to consider (1) whether "human health and welfare are at stake;" and (2) "the nature and extent of the interests prejudiced by delay." *See TRAC*, 750 F.2d at 80. Plaintiffs allege the delay in processing Mafundu's application has caused uncertainty about their future and leaves Mafundu unable to work. Am. Compl. ¶¶ 1, 47–50. These concerns tilt these factors in Plaintiffs' favor. *See Osechas Lopez*, 2023 WL 152640, at *6 ("'Peace of mind' has been considered by courts undertaking a TRAC analysis to weigh in a plaintiff's favor in other immigration contexts[.]"); *Khan v. Johnson*, 65 F. Supp. 3d 918, 930–31 (C.D. Cal. 2014) (noting "plaintiffs' interests in pursuing permanent residence and citizenship, or at least a final determination on their application so as to end a stressful waiting period, are compelling").

But while these hardships tilt factors three and five in Plaintiffs' favor, the Court finds that two considerations counsel against assigning these factors much weight. First, uncertainty is inherent in the immigration process and is therefore expected when filing a Form I-601A. *See, e.g.*,

*Palakuru*, 521 F. Supp. 3d at 53 (stating that while the plaintiff had "an interest in prompt adjudication, so too d[id] many others facing similar circumstances"); *cf. Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020) (noting certain types of prejudice are "inherent in the asylum application process"); *Liuqing Zhu v. Cissna*, No. CV 18-9698 PA (JPRx), 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019) (similar).  Second, Mafundu's application has been pending for a relatively short time when compared to the timeframes courts have found unreasonable in the immigration context.  *See, e.g.*, *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) ("[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." (quoting *Sarlak*, 2020 WL 3082018, at *6)); *Otto*, 2023 WL 2078270, at *5 (same); *Sivananthan v. Blinken*, No. 23-1181 (CKK), 2023 WL 4885858, at *3 (D.D.C. Aug. 1, 2023) ("[C]ourts . . . routinely find that delays of numerous *years* are not unreasonable.").  Ultimately, these factors are not enough to take Plaintiffs' claims out of the realm of implausibility.

### c.  *The Fourth Factor Weighs Heavily in Defendants' Favor*

Next, the Court must "consider the effect of expediting delayed action on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.  This factor alone justifies dismissing the Amended Complaint.  "The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991).  Even where all other *TRAC* factors weigh in a plaintiff's favor, a court may "refuse[] to grant relief . . . where 'a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'"  *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up) (quoting *In re Barr Lab'ys*, 930 F.2d at 75); *see also Otto*, 2023 WL

2078270, at \*5 ("[S]witching positions of applicants would 'produce no net gain' in the overall progression of adjudications." (quoting *Mashpee*, 336 F.3d at 1100)).

Here, Plaintiffs simply want to jump the line.  Because "[a]gency officials. . . presumably have not just been 'twiddling their thumbs'" while Mafundu's application has been pending, granting relief would simply require USCIS to put another application on hold.  *In re Barr Lab'ys*, 930 F.2d at 75 (alteration accepted) (quoting *Bd. of Trade v. SEC*, 883 F.2d 525, 531 (7th Cir. 1989)).  And granting relief in these circumstances "would set a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer."  *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 14 (D.D.C. 2021) (quoting *Dmitrenko v. Chertoff*, No. 07-cv-0082, 2007 WL 1303009, at \*1 (E.D. Va. Apr. 30, 2007)); *see also Liu v. Denayer*, No. CV 21-6653-DMG, 2022 WL 17370527, at \*5 (C.D. Cal. July 18, 2022) (same).  The Court has "no basis for reordering agency priorities" and will not simply place another applicant in Plaintiffs' position.  *See In re Barr Lab'ys*, 930 F.2d at 76.

### d.  The Sixth Factor is Neutral

The final factor simply clarifies a court does not have to "find any impropriety lurking behind agency lassitude" to grant relief.  *TRAC*, 750 F.2d at 80 (citation omitted).  Plaintiffs do not allege any bad faith or impropriety on the part of USCIS.  *See* Am. Compl. ¶ 62.  Therefore, this factor is neutral and does not make Plaintiffs' claim for relief any less implausible.

In sum, having analyzed the *TRAC* factors, the Court finds that Plaintiffs' Amended Complaint would warrant dismissal for failure to state a claim.  Mafundu and Zagros "have not provided an adequate reason why the Court should compel USCIS to grant [Mafundu] 'preferential treatment over the other applicants simply because Plaintiffs filed a lawsuit.'"  *Kamath v.*

*Campagnolo*, No. SACV 21-01044-CJC(ADSx), 2021 WL 4913298, at *4 (C.D. Cal. Aug. 13, 2021) (quoting *Muvvala v. Wolf*, No. 1:20-cv-02423 (CJN), 2020 WL 5748104, at *6 (D.D.C. Sept. 25, 2020)).

## CONCLUSION

In sum, the Court does not have jurisdiction over this matter.  But even if jurisdiction were to exist, Plaintiffs do not state a plausible claim to relief.[4]  Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.      Defendants' Motion, [ECF No. 14], is **GRANTED**.

2.      This case is **DISMISSED** for lack of subject matter jurisdiction.

3.      Any other pending motions are **DENIED AS MOOT**.

4.      The Clerk is instructed to mark this case **CLOSED**.

**DONE AND ORDERED** in Miami, Florida this 8th day of August, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

[4] Finally, the Amended Complaint is a shotgun pleading.  There are four types or categories of shotgun pleadings, the first of which encompasses pleadings that "contain[] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).  Here, the Amended Complaint is the first type of shotgun pleading because it reincorporates every preceding allegation into each subsequent count. Am. Compl. ¶¶ 68, 80, 83, 87.  The Court would therefore have to *sua sponte* dismiss the Amended Complaint. *See Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009).